

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| CONG NGUYEN § | CASE NO: 13-20563 | |
| Debtor(s) § | | |
| § | CHAPTER 13 | |
| § | | |
| NQS INSPECTION, LTD. § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-2002 | |
| § | | |
| CONG NGUYEN § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

Plaintiff NQS Inspection, Ltd. has filed a motion for summary judgment against Defendant Cong Nguyen asking the Court to find a Texas state court judgment excepted from discharge. The summary judgment motion is granted. The state court judgment of $1,135,419.56 is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

### Factual and Procedural Background

NQS is a professional quality assurance company providing a full range of inspection services in the petro-chemical and mechanical structuring industries. (ECF No. 1 at 2). It inspected storage tanks using a variety of radiography, ultrasound, magnetic particle, and liquid penetrant testing methods to ensure mechanical integrity. *Id.* Certain equipment used by NQS is regulated by the state. For example, x-ray equipment is registered to a particular company and may only be used by the license holder. *Id.* at 3.

Cong Nguyen began working for NQS in 2006, the same year the company was founded. *Id.* He served as the company's Radiology Safety Officer and the trustworthy officer for control of NQS equipment, both positions mandated by state regulation. He also served as NQS's field

manager for all work in the Corpus Christi area. In 2008, NQS and Nguyen entered into an employment agreement. Under the agreement, Nguyen was to be paid a base salary of $65,000 per year and a 5% net commission on all local call-out work. (ECF No. 92 at 12). Under the terms of the agreement, NQS agreed to provide Nguyen access to its confidential and proprietary information such as research, product plans, customer lists, software, etc. *Id.* at 13. Nguyen agreed that he would not:

> engage in any other employment, occupation, consulting or other business activity directly related to the business in which [NQS] is now involved in or becomes involved in during the term of Employee's employment, nor will Employee engage in any other activities that conflict with Employee's obligations to the Company.

*Id.* at 14. He also agreed to a 24-month non-compete clause.

Despite the provisions of the employment agreement, Nguyen began diverting clients away from NQS for his own benefit. Nguyen and several co-conspirators would use NQS equipment, procedures, and personnel to service NQS clients, yet bill the clients in the name of C Inspection and retain the client's money. (ECF No. 1 at 5). Nguyen then submitted falsified time records to NQS to make it appear that the NQS employees were working on NQS projects. *Id.* In May of 2013, Nguyen established C Inspection, LLC, a Delaware company, to further his fraudulent scheme.

NQS became aware of Nguyen's activities in early August of 2013. Nguyen was terminated on August 5, 2013. On August 9, 2013, NQS sued Nguyen and C Inspection in the 117th Judicial District, Nueces County, Texas. (ECF No. 18-6). NQS obtained a temporary restraining order against Nguyen and C Inspection preventing them from competing with NQS or soliciting NCS employees on the same day. (ECF No. 18-11).

On November 21, 2013, Nguyen filed for chapter 13 relief. (Case No. 13-20563; ECF No. 1). NQS filed a motion for relief from the automatic stay in order to prosecute the state court litigation on December 10, 2013. (Case No. 13-20563; ECF No. 21). The Court granted the motion on December 17, 2013.

On April 11, 2014, counsel for NQS deposed Nguyen in the state court litigation. Relevant portions of the deposition are transcribed below:

> Q    Okay. So, on February 12, 2014 Mr. Marks e-mails you. "I just reviewed a number of C Inspection procedure documents which you have published. These name me as the approver of those documents and intimate that I acted in your behalf as your level three. You know that this is a false representation. You should be ashamed of yourself to act with such dishonesty – dishonesty – dishonesty in a business which, above all, should be represented by men and women who demonstrate integrity in their personal and business life. You had a good employer who treated you right in every way. Why did you repay him the way you have? Paul Marks, president. NDT Training and Testing Center."
>
> And you responded, "Paul, I'm very sorry for doing what I did. I was getting through a very dark time, but that is still no excuse for what I did. I, nor anyone else, have any of those documents anymore, and C Inspection is no longer in business."
>
> MR. SHIPMAN:    Is there a question?
>
> MR. GOETZ:    Yeah.
>
> Q    You -- that's – that's what you wrote, right?
>
> A    Yes.[1]

\*\*\*

> Q    Okay. What about Supreme? I mean, you were doing business with Supreme since 2010, right?
>
> A    Uh-huh. Cause I did most of that myself.
>
> Q    There's not one time sheet with one employee's entry on it for Supreme from 2010 through the date of your termination – almost the date of your termination, right?

---

[1] (ECF No. 18-3 at 53-54).

    A      Correct.  Not that I can recall.

    Q      Because you – pardon me?

    A      Not that I can recall.

    Q      Right.  Cause if you would have turned it in, they would have said, "Who's Supreme," right?

    A      Correct.

    Q      So, every time an NQS employee was out at Supreme, you falsified their time sheet, right?

    A      Most of the time they weren't there.

    Q      But my question is, every time that they were there, you falsified their time sheet?

    A      Correct.[2]

\*\*\*

    Q      Okay. What else did you provide to PMI?

    A      Some procedures.

    Q      Okay.  Where did you get those procedures?

    A      I just copied it over from – I changed some things – little – from NQS.

    Q      Okay. So, these were NQS's procedures that you just copied and put C Inspection's name on it?

    A      I changed some wordings.[3]

\*\*\*

    Q      Did you ever falsify any of NQS's employees time sheets?

    A      Falsify as in?

---

[2] (ECF No. 18-3 at 91-92).

[3] (ECF No. 18-3 at 49).

> Q     Change the time, change the customer they were working on? Anything. Anything?
>
> A     I would say yea. I guess you could say that?[4]

\*\*\*

> Q     So, who decided if – if it was going to be a C Inspection job or an NQS job at Gates? I mean, what – did you make that decision?
>
> A     Yeah, I made that decision.
>
> Q     Okay. And how did you decide which would be under C Inspection and which would be under NQS?
>
> A     Just whenever I pretty much felt like it.[5]

\*\*\*

> Q     Mr. Nguyen, I just want to summarize what we just went over. We just finished reviewing the invoices from C Inspection to Supreme for the years 2010, 2011, 2012, 2013 totaling $91,419 and zero cents. And you admit that that was an accurate amount – that this chart summarizes an accurate amount of what you received from C Inspection – through C Inspection from Supreme; is that right?
>
> A     Yes.
>
> Q     Okay. And that was using NQS's employees and NQS's equipment and NQS's procedures; is that correct?
>
> A     Not all of it cause in all the time it was me – well, I guess you could consider me NQS, but –
>
> Q     You were –
>
> A     Well – okay. Yes
>
> . . .
>
> Q     Okay. And that vehicle that you went over – would go over there in, was that – was that an NQS vehicle as well that you would drive or the employees would drive over there to Supreme?
>
> A     Yeah. When the guys go there, yes.[6]

\*\*\*

---

[4] (ECF No. 18-3 at 39-40).
[5] (ECF No. 18-3 at 72).

[6] (ECF No. 18-3 at 101-02).

Q     Okay. The total amount here on this summary sheet, Exhibit 5A, from Top Notch for 2010 is 5,520. Is that an accurate amount?

A     As far as I can recall.

Q     . . . you agree that the total amount for Top Notch . . . for 2012 and 2013, all the years total $35,595?

A     Sounds about right.[7]

\*\*\*

Q     Okay. The total amount that we have summarized, showing all the payments from Gates, starts – it shows that you received zero payments in 2010, '11 and '12 and you started receiving payments in 2013, right?

A     Yes.

Q     Okay. We have $88,407 that you received in C Inspection?

A     Sounds about right.

Q     Okay. And that was for work performed using NQS's employees, equipment, vehicles?

A     No.

Q     Sorry?

A     Just me. I did – just the UT. I can do that real easily.

Q     So, you're representing that it was only you working out at Gates the entire time?

A     It was mostly me.

Q     And you were an NQS employee at that time?

A     Correct.

Q     And you were using what equipment? NQS's equipment?

A     Yeah. The UT machine.[8]

---

[7] (ECF No. 18-3 at 109).

[8] (ECF No. 18-3 at 110-11).

\*\*\*

Q     So, is this summary – that's a pretty accurate summary . . . you made $204,423 in 2013 under C Inspection . . . right?

A     Uh-huh.

Q     In 2012 you made $109,361, right?

A     Yeah.[9]

During the deposition, Nugyen admitted that he billed the following amounts to C Inspection while employed by NQS using NQS resources:

| Customer | Amount |
|---|---|
| Supreme | $ 91,419.00 |
| Gates | $ 88,407.00 |
| Top Notch | $ 35,595.00 |
| DM Services | $ 23,320.00 |
| P&K Services | $ 60,480.00 |
| Palacios Marine | $ 35,028.00 |
| Full Hole | $ 12,060.00 |
| Flowzone | $  7,452.00 |
| **Total** | $353,761.00 |

On May 13, 2015, NQS filed its First Amended Motion for Partial Summary Judgment against Nguyen in the state court litigation.  (ECF No. 18-2).  Nguyen did not answer the summary judgment motion or appear at the hearing.  (ECF No. 18 at 18).  On June 11, 2015, the state court granted NQS's motion for summary judgment and awarded actual damages totaling $356,351.20 for Nguyen's willful, fraudulent, and malicious misappropriation of assets and defalcation while acting in a fiduciary capacity.[10]  (ECF No. 18-1 at 1).  In light of the "clear and convincing evidence of Defendant Cong Nguyen's willful, fraudulent, and malicious misappropriation of Plaintiff NQS Inspection, Ltd.'s assets and defalcation while acting in a fiduciary capacity," the

---

[9] (ECF No. 18-3 at 141).

[10] Actual damages included the $353,761.00 from Nguyen's collection from NQS customers plus $1,590.20 for misappropriation of checks written to NQS, plus $1,000.00 as additional actual damages under the Texas Theft Liability Act.

state court awarded exemplary damages in the amount of $550,000.00. *Id.* at 2. Finally, the state court awarded $32,322.36 in prejudgment interest, $180,200.00 for reasonable attorney's fees, and $16,546.60 in court costs for a total judgment of $1,135,419.56.

NQS commenced this adversary proceeding on March 5, 2014, seeking a non-dischargeability determination pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). On May 9, 2014, the Court abated the adversary proceeding pending the resolution of the state court litigation. (ECF No. 9). On August 19, 2015, NQS filed a motion to reinstate the adversary proceeding as well as a motion for summary judgment, asserting that all issues relevant to dischargeability have been fully litigated in stated court.[11] At an October 9, 2015, hearing, the Court set a response deadline for October 26, 2015. Nguyen has not responded to the motion or otherwise appeared in this lawsuit.

## Jurisdiction and Authority

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1334. Although subject matter jurisdiction is proper in this Court, questions regarding the constitutional authority of an Article I bankruptcy judge must be addressed. Under *Stern v. Marshall*, the question of whether a bankruptcy judge may enter final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. 131 S.Ct. 2594, 2618 (2011). However, *Stern* does not implicate this Court's authority to hear and finally determine whether a claim is excepted from a debtor's discharge pursuant to 11 U.S.C. § 523(a). *See Farooqi v. Carroll (In re Carroll)*, 464, B.R. 293, 311 (Bankr. N.D. Tex. 2011); *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1046 (9th Cir. 2014). *See also In re Airhart*, 473 B.R. 178, 181 (Bankr. S.D. Tex. 2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code

---

[11] The Court reinstated the case on September 10, 2015. (ECF No. 19).

and no state law is involved). Accordingly, this Bankruptcy Court has authority to fully adjudicate this lawsuit.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[12] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may

---

[12] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-

movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

*11 U.S.C. § 523(a)(4)*

Section 523(a)(4) excepts from discharge those debts obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Fifth Circuit has stated that this discharge exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987)). The definition of a fiduciary under § 523(a)(4) is controlled by federal common law rather than Texas law. *Miller*, 156 F.3d at 602. Under § 523(a)(4), a "fiduciary is limited to instances involving express or technical trusts." *Texas Lottery Comm'n v. Tran*, 151 F.3d 339, 342 (5th Cir. 1998).

NQS argues the issues of embezzlement and fraud or defalcation in a fiduciary capacity were previously litigated in state court. Collateral estoppel can be applied in dischargeability proceedings. *Pancake v. Reliance Ins. Co. (In re Pancake),* 106 F.3d 1242, 1244 (5th Cir.1997). A federal court must look to state law to determine the preclusive effect of a state court judgment. *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985). In Texas, collateral estoppel applies "when an issue decided in the first action is actually litigated,

essential to the prior judgment, and identical to an issue in a pending action." *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575 (Tex. 2001).

The State Court Order granting summary judgment against Nguyen stated that:

> In his capacity as NQS' designated Trustworthy and Reliability Officer, Radiation Safety Officer, and its local area manager, with all of the above job responsibilities, Defendant Cong Nguyen was a key NQS employee and owed the following fiduciary duties to NQS: the duty of full disclosure of all material facts, the duty to act for the benefit of NQS with loyalty and utmost good faith, and the duty to refrain from self-dealing.

(ECF No. 18-1 at 4). It then found that Nguyen breached those fiduciary duties. However, the state court's definition of a fiduciary was far broader than the federal definition, which does not include the "duty . . . that an officer or director may not serve his own personal interest at the expense of the corporation or its stockholders." *In re Miller*, 156 F.3d at 602. Absent a finding of an express or technical trust, the State Court Order is not preclusive as to whether there was "fraud or defalcation while acting in a fiduciary capacity."

Nevertheless, the State Court Order is preclusive as to the issue of embezzlement. Since Nguyen came into possession of NQS' property and trade secrets lawfully, embezzlement, rather than larceny, is the § 523(a)(4) term which applies. *Id.* (citing *Great Am. Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)). "Embezzlement is defined for the purposes of § 523(a)(4) as the 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *Miller*, 156 F.3d at 602 (quoting *Greyhound Lines v. Thurston (In re Thurston)*, 18 B.R. 545, 550 (Bankr. M.D. Ga. 1982)). Because discharge exceptions are to be narrowly construed, to meet the definition of embezzlement under the Code, there must be proof of the debtor's fraudulent intent in taking the property. *Miller*, 156 F.3d at 603.

The state court found that:

> NQS entrusted its property to Defendant Cong Nguyen, he appropriated such property for a use other than that for which NQS entrusted and the circumstances indicate he acted with a fraudulent intent. . . . NQS suffered actual damages of at least $356,351.20 plus $600.00 for misappropriation of checks written to NQS, plus $1,000 as additional actual damages under the Texas Theft Liability Act . . . as a result of Defendant Cong Nguyen's willful, fraudulent, and malicious misappropriation of its assets and defalcation while acting in a fiduciary capacity.[13]

(ECF No. 18-1 at 7). The issue of Nguyen's embezzlement was actually litigated, it was essential to the prior judgment, and it was identical to an issue in the pending litigation. There is no genuine issue of material fact that Nguyen fraudulently misappropriated property entrusted to him by NQS, thereby establishing an exception to discharge pursuant to 11 U.S.C § 523(a)(4).

*11 U.S.C. § 523(a)(2)(A)*

In order "[f]or a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result." *In re Mercer*, 246 F.3d 391, 403. The state court summarized Nguyen's fraudulent conduct as follows:

> xiii. Defendant Cong Nguyen signed an employment agreement explicitly stating he would not compete with NQS during his employment . . . so he also knew he was not authorized to use NQS' employees, equipment, testing procedures . . ., confidential information and licenses to perform jobs for NQS' customers and then bill and collect the money for his own personal benefit under his company named C Inspection.
>
> xiv. From August 6, 2010 through August 5, 2013, Defendant Cong Nguyen falsified NQS' employee time sheets to conceal the fact that he was using NQS' employees to work on jobs he was billing and collecting under his own company, C Inspection.

---

[13] As an unlawful appropriation of funds for personal use with fraudulent intent, the damages under the Texas Theft Liability Act satisfy the requirements of larceny so as to render the debt nondischargeable under 11 U.S.C. § 523(a)(4). *Wright v. Minardi*, 536 B.R. 171, 185 (Bankr. E.D. Tex. 2015).

> xviii. Defendant Cong Nguyen knowingly misrespresented and failed to disclose the above material facts to NQS with the intent to cause harm to NQS. NQS justifiably relied upon such misrepresentations and suffered harm as a result including, without limitation, loss of the money which it paid to Cong and its other employees for services which Defendant Cong Nguyen misrepresented as has having been performed on NQS jobs.
>
> xxv. NQS suffered actual damages of at least $356,351.20 . . . plus $600.00 for misappropriation of checks written to NQS, plus $1,000 as additional actual damages under the Texas Theft Liability Act . . . as a result of Defendant Cong Nguyen's willful, fraudulent, and malicious misappropriation of its assets and defalcation while acting in a fiduciary capacity.

(ECF No. 18-1 at 7). There is no genuine issue of material fact that Nguyen fraudulently altered the time sheets he submitted to NQS, that NQS relied on these misrepresentations, and that it was harmed as a result. Summary judgment is appropriate to except from discharge NQS' judgment against Nguyen pursuant to 11 U.S.C. § 523(a)(2)(A).

*11 U.S.C. § 523(a)(6)*

Under § 523(a)(6), a debt for "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge. Willful and malicious injury requires an actual intent to cause injury, not just the act which results in injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6). *Id.* The Fifth Circuit has interpreted "willful and malicious" to be a "unitary concept entailing a single two-pronged test." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998). Where there is either an objective substantial certainty of harm or a subjective motive to cause harm, the injury was willful and malicious. *In re Miller*, 156 F.3d at 606.

The state court found that "Defendant Cong Nguyen's acts were willful and malicious because of the substantial certainty of harm that would and did result to NQS causing it actual damages." (ECF No. 18-1 at 7). Indeed, Nguyen himself admitted at his deposition that he

knew his actions were wrong and that, during his fraud, he would decide to bill NQS customers to C Inspection "[j]ust whenever I pretty much felt like it." This Court must recognize the factual findings of the State Court Order under principles of collateral estoppel. Nguyen's debts to NQS arose from willful and malicious injury and are excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

*Extent of Debt Excepted From Discharge*

In addition to the $356,351.20 in actual damages, the state court awarded NQS exemplary damages in the amount of $550,000.00 for Nguyen's "willful, fraudulent, and malicious misappropriation of Plaintiff NQS Inspection, Ltd.'s assets and defalcation while acting in a fiduciary capacity." (ECF No. 18-1 at 2). It also awarded $180,200.00 for NQS's reasonable and necessary attorney's fees, $32,322.36 in prejudgment interest, and $16,546.60 in court costs.

Legal fees and other damages arising from a state court judgment are excepted from discharge when the underlying judgment is itself excepted from discharge. *See Cohen v. de la Cruz*, 523 U.S. 213 (1998) ("[T]he text of § 523(a)(2)(A) . . . encompasses any liability arising from money, property, etc. that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor."). Applied to this case, the debt excepted from discharge is not only the $356,351.20 in actual damages, $550,000.00 in exemplary damages, and $180,200.00 in attorney's fees, plus costs and interest.[14]

---

[14] As set forth above, the § 523 fiduciary standard and the state law fiduciary standard are not fully co-existent. Because the award of exemplary damages was based, at least in part, on Nguyen's "defalcation while acting in a fiduciary capacity," it is possible that collateral estoppel would not apply to the entire $550,000.00 award. The state court judgment appears to rest on alternative determinations. "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 183 (5th Cir. 1997) (*citing* Restatement (Second) of Judgments § 27 cmt. i). Since Nguyen has not raised this issue or otherwise contested the summary judgment motion, this argument has been waived.

**Conclusion**

The Court will issue a separate judgment consistent with this Memorandum Opinion.

SIGNED **November 9, 2015.**

                                           Marvin Isgur
                            UNITED STATES BANKRUPTCY JUDGE